Francis Ricard appeals from a Probate and Family Court judgment, dated January 27, 2017, dismissing his complaint for modification, which requested termination of his alimony obligation pursuant to the Alimony Reform Act of 2011, G. L. c. 208, §§ 48 - 55 (reform act), inserted by St. 2011, c. 124, § 3.[2] Ricard contends that the trial judge committed error in awarding Deborah Dutton (Ricard's former wife) alimony beyond the presumptive durational limit established by the reform act.[3] We affirm.
Facts. Ricard and Dutton were married on October 12, 1986, and were divorced,[4] by a judgment nisi, on March 5, 2003. The divorce judgment incorporated the parties' separation agreement; however, provisions regarding alimony were "merged in the [divorce] judgment."
In October, 2015, Ricard filed a complaint seeking the termination of his alimony obligation based on the running of the durational limit established by G. L. c. 208, § 49. Pursuant to § 49(b )(4), for marriages lasting between fifteen and twenty years,[5] as was the case here, "general term alimony shall continue for not longer than 80 per cent of the number of months of the marriage."[6] Here, the statutory durational limit for spousal alimony was just over 155 months or February, 2016. The parties submitted a joint stipulation of uncontested facts and were the only trial witnesses. Following the trial, the judge made written findings of fact. The judge expressly found that Dutton was unable to provide sufficiently for her own support, due largely to her serious "pre-existing medical situation and disability,"[7] a grave circumstance warranting deviation from the presumptive durational limits in the interests of justice. See G. L. c. 208, § 53(e )(1) & (8). The judge found that Dutton suffers from a congenital spinal defect that "continues to substantially hamper her ability to provide for her own needs,"[8] and that Dutton lives on a meager income, comprised of modest disability benefits and occasional aid from family, which often left Dutton unable to pay for medical treatment or medication. In short, the judge determined that Dutton had to make do under strained financial circumstances. On the other hand, the judge concluded that Ricard failed to meet his burden of establishing an inability to pay alimony.[9] In the end, the judge determined that Dutton met her burden of demonstrating an ongoing need for alimony, and that the interests of justice warranted a deviation from the presumptive statutory durational limit. For the reasons cited, the judge denied Ricard's request to modify or terminate alimony.[10]
Standard of review. We review a judge's denial of a party's request for modification of alimony for an abuse of discretion. See Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 773 (2014). A complaint for modification of alimony is governed by the reform act, which "changed neither the essential purpose nor the basic definition of alimony: 'the payment of support from a spouse, who has the ability to pay, to a spouse in need of support.' " Van Arsdale v. Van Arsdale, 477 Mass. 218, 219 (2017) (Van Arsdale ), quoting from G. L. c. 208, § 48. The reform act did bring about certain changes to the Commonwealth's alimony laws, notably, the "creation of durational limits-or presumptive termination dates-for alimony obligations arising from marriages lasting fewer than twenty years." Van Arsdale, supra. The presumption that alimony must terminate after a stated period of time "may be overcome, however, by showing that the payment of alimony beyond the relevant durational limit is 'required in the interests of justice.' " Ibid., quoting from G. L. c. 208, § 49(b ). See George v. George, 476 Mass. 65, 69-70 (2016) (George ).
Discussion. The fundamental purpose of alimony has remained constant despite the provisions of the reform act.[11] Awards predating the enactment of the reform act may be modified by a judge, in amount and duration, based upon a party's showing of a material change in circumstances but "for not longer than 80 per cent of the number of months of the marriage" if the duration of the marriage is, as here, between fifteen and twenty years. G. L. c. 208, § 49(b )(4). See Rodman v. Rodman, 470 Mass. 539, 544 (2015) (durational limits of alimony awards are retroactive and applicable to awards predating reform act). A judge may, however, deviate beyond these termination dates if the judge's written findings establish that doing so is warranted in the interests of justice. "The recipient spouse bears the burden of proving by a preponderance of the evidence that deviation beyond the presumptive termination date is 'required in the interests of justice.' G. L. c. 208, § 49(b )." George, supra at 70. A judge is obliged to "evaluate the circumstances of the parties in the here and now; that is, as they exist at the time the deviation is sought, rather than the situation as it existed at the time of divorce." Ibid.
"Although a 'judge has broad discretion when awarding alimony under the [alimony reform act],' the judge must consider all relevant, statutorily specified factors, such as those set forth in G. L. c. 208, §§ 49(d ) and 53(a )." Duff-Kareores v. Kareores, 474 Mass. 528, 535-536 (2016), quoting from Zaleski v. Zaleski, 469 Mass. 230, 235 (2014) (footnote omitted). The statutory factors for modifying an existing alimony order that deviates from durational limits are set forth in G. L. c. 208, § 53(e ).[12] Such factors, bearing on the analysis of need, include the health and age of the parties. Young v. Young, 478 Mass. 1, 7 n.7 (2017).
The judge's written findings demonstrate that he considered the statutory factors in § 53(e ) before ordering a deviation from the legislatively mandated durational limits of alimony. The judge essentially found that Dutton's "chronic illness[ ] or unusual health circumstances" warranted the deviation. The judge's thoughtful written findings reflect a sound understanding of the statutory criteria and are rooted in the evidence admitted at trial. Accordingly, we discern no reasonable basis to disturb the judgment.[13]
Judgment dated January 27, 2017, affirmed.

At the time he filed his complaint for modification, Ricard was paying $175 per week for alimony.

The parties acknowledge that application of that presumptive durational limit would bring an end to the alimony award due to the length of their marriage.

The parties had filed a joint petition for divorce on December 11, 2002.

General Laws c. 208, § 48, defines the "[l]ength of the marriage" as "the number of months from the date of legal marriage to the date of service of a complaint or petition for divorce." The reform act provides for the circumstance of increasing the length of the marriage if there is "evidence that the parties' economic marital partnership began during their cohabitation period prior to the marriage." Ibid.

"General term alimony" is defined as the "periodic payment of support to a recipient spouse who is economically dependent." G. L. c. 208, § 48.

Dutton presently suffers from a degenerative spinal condition that has required multiple medical procedures, the most recent occurring in May, 2016.

The parties agree that Dutton is presently disabled and unable to work.

At trial, Ricard confirmed that he does not pay rent to live in the home of his domestic partner, with whom he has resided since August, 2003. Ricard's partner also contributes substantially to the payment of regular household expenses.

That said, the judge was "empathetic to the plight of both parties" and observed that Ricard's present income was "not so great that the payment of alimony is inconsequential."

Alimony is support paid by one spouse, who is able to do so, to the other spouse in need. Gottsegen v. Gottsegen, 397 Mass. 617, 624 (1986).

The factors include "(1) advanced age; chronic illness; or unusual health circumstances of either party; (2) tax considerations applicable to the parties; (3) whether the payor spouse is providing health insurance and the cost of health insurance for the recipient spouse; (4) whether the payor spouse has been ordered to secure life insurance for the benefit of the recipient spouse and the cost of such insurance; (5) sources and amounts of unearned income, including capital gains, interest and dividends, annuity and investment income from assets that were not allocated in the parties['] divorce; (6) significant premarital cohabitation that included economic partnership or marital separation of significant duration, each of which the court may consider in determining the length of the marriage; (7) a party's inability to provide for that party's own support by reason of physical or mental abuse by the payor; (8) a party's inability to provide for that party's own support by reason of that party's deficiency of property, maintenance or employment opportunity; and (9) upon written findings, any other factor that the court deems relevant and material." G. L. c. 208, § 53(e )(1)-(9).

We do not address Ricard's remaining contentions as "[w]e find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).