NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-139                                     Appeals Court

ALISON J. VOORHIS  vs.  PAUL B. RELLE.[1]

No. 19-P-139.

Suffolk.     November 1, 2019. - February 10, 2020.

Present:  Agnes, Sullivan, & Blake, JJ.

Probate Court, Divorce.  Divorce and Separation, Alimony,
     Findings, Modification of judgment.  Contempt.  Practice,
     Civil, Contempt.

Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on September 25, 2000.

Complaints for modification, filed on September 6, 2016 and November 7, 2016, and a complaint for contempt, filed on October 16, 2017, were heard by Patricia A. Gorman, J.

_____

[1] Although the wife had filed a motion to "impound the file in this matter" and the Probate and Family Court judge having found that the matter "involve[d] sensitive information" issued an order of impoundment, we conclude that there is no longer any good cause to continue the impoundment of "the file," pursuant to Rule 8 of the Uniform Rules on Impoundment Procedure (2015). Accordingly, we vacate the order of impoundment dated October 23, 2017.  See S.J.C. Rule 1:15, § 1 (b) (ii), as appearing in 472 Mass. 1301 (2015) ("the Appeals Court or a single justice thereof has discretion to enter, either sua sponte or upon motion, any order relating to impoundment without holding a hearing").

Janice Bassil for the wife.
Maureen McBrien for the husband.


BLAKE, J.  In this divorce modification case, a judge of the Probate and Family Court was asked, but declined, to deviate from the durational limits imposed by the Alimony Reform Act of 2011 (act), "in the interests of justice."  See St. 2011, c. 124, §§ 4, 5.  We conclude that the judge did not abuse her discretion as, here, the facts do not warrant deviation from the durational limits.  We therefore affirm the modification judgment, with one exception.

1.  Background.  We summarize the judge's findings of fact, supplemented by undisputed facts in the record and reserving certain facts for later discussion.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  The parties were married on February 20, 1982, and had four children.[2]  They divorced on January 22, 2002. The judgment of divorce nisi incorporated the parties' separation agreement that provided, in pertinent part, that the husband pay $4,020 per month in alimony to the wife, plus thirty-five percent of any gross cash bonuses he received.  The wife was awarded physical custody of the parties' four children. The husband was required to pay $2,650 per month in child support.  The marital estate was valued at approximately $1

_____

[2] At the time of this trial, three of the children were emancipated.  The youngest was a college freshman.

million and was equally divided between the parties, as was the husband's pension. At that time, the parties were debt free.

In September 2006, the wife was arrested, and in December 2007, she pleaded guilty to vehicular manslaughter and was sentenced to from eight to twelve years in prison; she served in excess of eight years and was released in October 2016.[3] In a modification judgment entered in September 2006, the husband was awarded custody of the unemancipated children and his child support obligation was terminated; the husband was also ordered to maintain a life insurance policy naming the wife as beneficiary for so long as he was required to pay her alimony. In a modification judgment entered in December 2007, his alimony obligation was reduced from $4,020 per month to $1,500 per month and his obligation to pay additional alimony from cash bonuses was terminated. This modification judgment also provided that the husband would resume paying alimony in the amount of $4,020 plus thirty-five percent of his gross cash bonuses "following the date [the wife] is released."

2. Modification and contempt proceedings. On September 6, 2016, approximately one month before the wife's release from

_____

[3] The wife is a defendant in a wrongful death case filed by the family of the man she killed. At the time of this trial, the wrongful death suit was still pending. The judge did not factor this lawsuit when considering the wife's financial condition.

prison, the husband filed a complaint for modification seeking a termination of his alimony and the life insurance obligations pursuant to G. L. c. 208, § 49 (b) (4).[4]  Here, the parties were married for 226 months.  By the terms of the act, the duration of the husband's alimony obligation was to be eighty percent of 226 months or 180 months.  Thus, as of January 22, 2017, the husband's alimony obligation should have ended.  Instead, he made payments for longer than the maximum durational limit.  On December 21, 2016, the judge denied, in part, the husband's motion for temporary orders.  She ordered him to continue to pay alimony to the wife, but ordered the husband to pay thirty-five percent of his gross cash bonuses into an escrow account.  At the time of trial, the husband had paid $63,000 into the escrow account.

On March 20, 2017, the wife filed an amended answer and counterclaim, asking that the court deviate from the durational limits and order a continuation of the husband's alimony, including the thirty-five percent of cash bonuses, and life insurance obligations.  She also asked to be relieved from contributing to certain expenses of the children.  Following a trial, the judge issued, on March 30, 2018, a modification

---

[4] The act provides that general term alimony shall continue for no longer than eighty percent of the number of months of the marriage, if the length of the marriage is twenty years or less, but more than fifteen years.

judgment that terminated the husband's alimony obligation, retroactive to the presumptive termination date of January 22, 2017; terminated the husband's obligation to provide the wife life insurance; and relieved the wife of her obligation to pay for two of the children's cellular telephones and to pay twenty percent of the college expenses of the four children.  The judge denied the wife's counterclaim for modification where she sought alimony payments and an extension of those payment beyond the durational term limits.  On that same date, the judge issued a separate judgment on the wife's October 2017 complaint for contempt that found the husband not guilty of civil contempt. The wife appeals from both judgments.

3.  Discussion.  a.  Durational limits on alimony.  Alimony is "the payment of support from a spouse, who has the ability to pay, to a spouse in need of support for a reasonable length of time."  G. L. c. 208, § 48.  "The purpose of alimony is to provide adequate support for a spouse who needs it."  Williams v. Massa, 431 Mass. 619, 634 (2000).  General term alimony, in particular, aims to support one spouse who has become "economically dependent" on the other.  G. L. c. 208, § 48. Connor v. Benedict, 481 Mass. 567, 572 (2019).  "A judge has broad discretion when awarding alimony under the statute." Zaleski v. Zaleski, 469 Mass. 230, 235 (2014).  Nonetheless, the "reasonable length of time" for which alimony payments may be

ordered is constrained by the act, which sets presumptive durational limits on general term alimony. See G. L. c. 208, § 49 (b). The limits are premised on the length of the parties' marriage; the longer the marriage, the longer the maximum permissible duration of alimony. In order to determine the duration of an award of general term alimony, therefore, a judge first must calculate the length of the parties' marriage. See G. L. c. 208, § 49 (b) (1)-(4); Duff-Kareores v. Kareores, 474 Mass. 528, 535 & n.10 (2016).

b. Termination of alimony. An existing alimony award that exceeds the durational limits established by the act can be modified upon a complaint for modification without requiring a showing of a material change of circumstances. See St. 2011, c. 124, § 4 (b); Chin v. Merriot, 470 Mass. 527, 532-533, 536 (2015) ("uncodified provisions of an act express the Legislature's view on some aspect of its operation"). A judge may order alimony to continue beyond the durational limits if written findings based on the evidence establish that deviation is "required in the interests of justice." George v. George, 476 Mass. 65, 70 (2016), quoting G. L. c. 208, § 49 (b). "The recipient spouse bears the burden of proving by a preponderance of the evidence" that the deviation is required in the interests of justice. George, supra. "Further, a judge should evaluate the circumstances of the parties in the here and now, that is,

as they exist at the time the deviation is sought, rather than the situation as it existed at the time of divorce."  Id.  While "a 'judge has broad discretion when awarding alimony under the [act],' the judge must consider all relevant, statutorily specified factors, such as those set forth in G. L. c. 208, §§ 49 (d) and 53 (a)" (footnote and citation omitted).  Duff-Kareores, 474 Mass. at 535-536.  The statutory factors to be considered in connection with deviation beyond the durational limits are set forth in G. L. c. 208, § 53 (e).[5]

---

[5] The factors are as follows:

"(1) advanced age; chronic illness; or unusual health circumstances of either party;

"(2) tax considerations applicable to the parties;

"(3) whether the payor spouse is providing health insurance and the cost of health insurance for the recipient spouse;

"(4) whether the payor spouse has been ordered to secure life insurance for the benefit of the recipient spouse and the cost of such insurance;

"(5) sources and amounts of unearned income, including capital gains, interest and dividends, annuity and investment income from assets that were not allocated in the parties['] divorce;

"(6) significant premarital cohabitation that included economic partnership or marital separation of significant duration, each of which the court may consider in determining the length of the marriage;

"(7) a party's inability to provide for that party's own support by reason of physical or mental abuse by the payor;

c.  The wife's financial situation.  At the time of trial,
the wife was fifty-eight years of age and worked fulltime at
Home Depot.  She earned $15.75 per hour and had the opportunity
to work overtime.  Her average gross weekly earnings were $699
or approximately $36,000 per year.  The wife paid for employer-
provided health insurance.  She had additional income of
approximately $4,000 per year from renting a parking space, and
she received mandatory IRA distributions of $15,570 per year
from an account that she inherited after the divorce.  The wife
deferred receipt of distributions from the portion of the
husband's pension awarded to her in the divorce.[6]

Following the divorce, the wife's parents established the
Alison J. Voorhis Trust (trust), payable to the wife as sole
beneficiary upon the last to die of the wife's parents.  The
wife's sisters were the trustees.  The trust provided that the
trustee "shall distribute to the [wife] as much of the income

_____

"(8) a party's inability to provide for that party's own
support by reason of that party's deficiency of property,
maintenance or employment opportunity; and

"(9) upon written findings, any other factor that the court
deems relevant and material."

G. L. c. 208, § 53 (e).

[6] At the time of trial, the distributions would have been
nearly $17,000 per year.  If she waited until the year 2024, the
distributions were estimated to be approximately $20,000 per
year.

and principal of the [wife's] trust as our Trustee determines is necessary or advisable for the health, maintenance and support of the [wife]." The trust contained an IRA valued at $414,000 and accounts at Vanguard and TD Bank. The Vanguard account was valued at $1,248,270.87 and the TD Bank account was valued at $26,558.23. Following the death of the wife's parents and after the wife's release from prison, the trustees paid a number of expenses on behalf of the wife, including: rent, a security deposit and broker fee, a computer and software, health insurance premiums, moving expenses, and legal fees totaling $96,123.91 for one year. This amount included $27,000 that the trust loaned to the wife for State taxes.[7] The trustees declined the wife's request for payment of a new mattress and the monthly probation fee associated with her criminal conviction.[8]

The judge did not credit portions of the financial statement filed by the wife. The wife listed the value of the trust at zero dollars and the totality of her assets at $40,131. The judge, however, found the wife had assets, including the value of the trust, of $1,314,460. The wife called an expert

---

[7] The wife also owed $167,000 for unpaid Federal taxes. She entered into a payment plan to pay $322 per month towards that debt.

[8] The wife claims that it was error for the judge to consider the assets of the trust in her analysis; however, neither trustee testified and no evidence was presented to support her contention.

witness, Susan Miller, who testified to financial projections that she ran based on the wife's financial statement. Notwithstanding that Miller testified that the wife would not run out of money until age seventy-eight, the judge did not credit her testimony, as she found that it was based on inaccurate financial information.  After finding certain claimed expenses anticipatory, the judge determined the wife's weekly expenses were $1,244.

Since the divorce, the wife has spent in excess of $100,000 in legal fees in connection with the criminal case and a wrongful death suit filed by the family of the man she killed.

d.  The husband's financial situation.  At the time of the trial, the husband was fifty-eight years of age and he had remarried.  He remained employed with the company that he worked for over the past twenty-nine years, earning a base salary of $273,000 per year.[9]  In addition to his base salary, the husband received bonuses based on his and the company's performance.  At the time of the trial, his most recent bonus was $180,000, and he deposited thirty-five percent or $63,000 into the escrow account, pursuant to the temporary order of the court.  At the time of the trial, the husband had assets of approximately $4,100,000, including $900,000 that he inherited in 2014.

_____

[9] The husband's income for 2016, totaling approximately $866,000, included stock that had vested in 2015.

Following the divorce and the wife's incarceration, the husband paid $600,000 in college expenses for the three eldest children and anticipated paying an additional $260,000 for the youngest child's college expenses.

e. Findings of fact and rationale. Here, it is clear from the judge's written findings that she properly considered the factors of G. L. c. 208, § 53, and made the necessary finding that deviation from the durational limits was not required "in the interests of justice." Among other things, the judge took into account the parties' ages, health, tax considerations, availability and cost of health and life insurance, the approximate nine-month premarital cohabitation,[10] the wife's allegations of physical abuse during the marriage,[11] and the wife's ability to support herself, including sources of unearned income. She also considered that the husband had custody of the children since the wife's incarceration, and that the husband had paid all of the four children's expenses, without contribution from the wife, including college expenses. The judge considered the wife's postdivorce struggle with alcohol,

_____

[10] The judge found that there was no evidence of an economic partnership during these approximate nine months and accordingly did not add additional time to the length of the parties' marriage.

[11] The judge found that allegations of domestic violence were troubling, but that the wife did not produce credible evidence that these allegations prevented her from working.

but found, in the absence of any evidence to the contrary, that the wife had not proved that this was a chronic illness or unusual health circumstance that prevented her from working. Indeed, the judge found, with ample record support, that the wife was working full time, derived income from the rental of a parking space, and was the beneficiary of a trust. The judge further properly relied on other relevant factors, including the wife's inaccurate financial statement that misled the court as to her income and assets.

The wife focuses her claim of error on the failure of the judge to consider the marital lifestyle and the wife's ability to maintain that lifestyle. While these are appropriate considerations in many issues that arise in the nature, amount, and duration of alimony pursuant to G. L. c. 208, § 53 (a), they do not apply to cases involving deviation from the durational limits. See G. L. c. 208, § 53 (e). Marital lifestyle is not listed as a factor in § 53 (e). Moreover, although the recipient's inability to provide for her own support is a factor to be considered in deviating from the durational limits, see G. L. c. 208, § 53 (e) (8), the inability to be self-supporting is not the same as the recipient's inability to maintain the marital lifestyle. When considering a deviation from the durational limits of alimony, the analysis is in the "here and now," not the marital lifestyle at the time of the divorce.

George, 476 Mass. at 70. These are highly intensive factual inquiries to be made on a case-by-case basis. Accordingly, we discern no abuse of discretion in the judge's decision to decline to deviate from the presumptive duration of alimony.

f. Retroactive modification. The judge ordered the termination of the husband's alimony obligation retroactive to January 22, 2017, and ordered the wife to repay $56,608 in overpayments of alimony in a monthly amount of $500. While there is no statutory requirement that such orders be given retroactive effect, a judge has the discretion to do so. Boulter-Hedley v. Boulter, 429 Mass. 808, 809-810 (1999). Indeed, in Pierce, 455 Mass. at 305-306, the Supreme Judicial Court held that retroactive modification was within the judge's discretion, but that the judge must first make findings "reflecting her consideration of all the factors mandated by G. L. c. 208, § 34." Id. at 306. Here, there are no findings nor a § 34 analysis to explain the retroactive modification requiring the wife to repay the husband $56,508 and to do so in a monthly amount of $500. Accordingly, that portion of the modification judgment is vacated and the matter is remanded. See Smith v. Smith, 93 Mass. App. Ct. 361, 364-366 (2018). On remand, the judge should consider the enforceability of the retroactive award, including the wife's ability to pay a sum certain in a specified time frame. See Poras v. Pauling, 70

Mass. App. Ct. 535, 540 (2007), quoting Larson v. Larson, 28 Mass. App. Ct. 338, 340 (1990) ("defendant must be found to have the ability to pay at the time the contempt judgment enters").

g. Contempt. Additionally, the wife contends that the husband should be held in contempt for failing to pay thirty-five percent of his cash bonuses as additional alimony as required by the separation agreement. "To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command" (citation omitted). Birchall, petitioner, 454 Mass. 837, 851 (2009). The contempt must be proved by clear and convincing evidence, and the judge is to consider "the totality of the circumstances." Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009).

We review the judge's ruling that the husband was not guilty of contempt for abuse of discretion. See L.F. v. L.J., 71 Mass. App. Ct. 813, 821 (2008). Here, the wife failed to meet her burden. The judge found that there was a clear and unequivocal order, but not an undoubted disobedience. The judge credited the testimony of the husband, and relied on documents that described the mandatory deferments that vested pursuant to a schedule, in finding that the disputed sums were not cash bonuses subject to the additional alimony provision of the separation agreement.

4.  <u>Conclusion</u>.  The contempt judgment is affirmed.  As to the modification judgment, the last two sentences of paragraph numbered one are vacated, and the matter is remanded for further findings consistent with this opinion.[12]  In all other respects the modification judgment is affirmed.

<u>So ordered</u>.

---

[12] We express no view whether further hearings are necessary; it is within the judge's discretion whether to conduct additional hearings on remand.