NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11604

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 3839  vs.  SEX
OFFENDER REGISTRY BOARD.


Plymouth.      September 3, 2014. - August 21, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, & Lenk,
JJ.


Sex Offender.  Sex Offender Registration and Community
Notification Act.  Delinquent Child.  Constitutional Law,
Sex offender.  Due Process of Law, Sex offender,
Retroactive application of statute.  Statute, Retroactive
application.  Practice, Civil, Sex offender.
Administrative Law, Findings.



Civil action commenced in the Superior Court Department on
February 18, 2011.

The case was heard by Christopher J. Muse, J., on a motion
for judgment on the pleadings, and a motion for relief from
judgment and for reconsideration was also heard by him.

The Supreme Judicial Court granted an application for
direct appellate review.


Matthew J. Koes for the plaintiff.
William H. Burke for the defendant.


DUFFLY, J.  In 1990 and 1991, the plaintiff, John Doe, Sex

Offender Registry Board No. 3839 (Doe), was adjudicated a delinquent juvenile by reason of sex offenses he committed in 1989 and 1990, when he was fourteen and fifteen years old. Following his adjudications, Doe was committed to the Department of Youth Services (DYS), where he remained for over nine years, pursuant to orders extending his commitment beyond his eighteenth birthday. In April, 2000, Doe was committed temporarily to the Massachusetts Treatment Center (treatment center) for evaluation on the Commonwealth's petition that Doe be civilly committed as a sexually dangerous person (SDP); thereafter, he was found to be sexually dangerous and was civilly committed to the treatment center for a period of from one day to life. In January, 2011, twenty years after Doe committed the offenses, the defendant Sex Offender Registry Board (SORB) classified him as a level three sex offender. In September, 2013, Doe was determined to be no longer sexually dangerous, and was discharged from the treatment center.

Doe contends that the sex offender registration statute, G. L. c. 6, §§ 178C-178Q (registration statute), as applied to him, constitutes an ex post facto punishment, and violates his rights to due process and protection against double jeopardy, because the requirement that he register as a sex offender was triggered by juvenile adjudications that preceded the statute's enactment. See St. 1996, c. 239, § 1. He maintains also that,

even if the registration statute does not operate impermissibly as applied to him, the hearing examiner's determination that he is a level three sex offender was unsupported by substantial evidence.  Doe argues that the hearing examiner did not properly consider his youth at the time of his offenses, and that the decision was based on factual errors and unreliable evidence. Doe argues further that the evidence underlying the classification was stale, because the hearing resulting in the final classification took place more than three years before his discharge from the treatment center.

We conclude that the registration statute was not applied retroactively as to Doe; the hearing examiner considered Doe's youth in accordance with the regulatory factors in effect; and the factual errors complained of either were de minimis or were determinations adequately supported by evidence in the record, and were not erroneous.  Doe's contention regarding staleness, however, is valid.  A final classification by SORB must be based on current evidence of a sex offender's risk of reoffense and dangerousness to the community, see G. L. c. 6, §§ 178C-178Q, and a final classification made over three years prior to an offender's release from confinement is presumptively stale.  See Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass.    (2015) (Doe No. 7083).  Because Doe's classification determination was not based on current evidence

of the relevant risk factors, he is entitled to new evidentiary hearing at which SORB will bear the burden of establishing his risk of reoffense and his level of danger to the community. See id. at   .

Background and prior proceedings. In 1990, Doe admitted to sufficient facts to support a finding of delinquency on a charge that in 1989, when he was fourteen years old, he raped a six year old girl. He was placed on probation for that offense. While on probation, Doe sexually assaulted two nine year old girls, and in 1991, he was adjudicated delinquent on two counts of indecent assault and battery of a child under the age of fourteen. He was committed to DYS, where he was confined until he reached the age of twenty-five.

In April, 2000, in anticipation of Doe's discharge from confinement, the Commonwealth filed a petition in the Superior Court pursuant to G. L. c. 123A, § 12 (e), seeking to have Doe temporarily committed to the treatment center pending a probable cause hearing on its petition that Doe be civilly committed as an SDP. In September, 2002, a Superior Court judge determined that there was probable cause to believe that Doe was an SDP, and ordered that Doe undergo examination and diagnosis at the treatment center. See G. L. c. 123A, § 13. In January, 2003, a Superior Court jury found that Doe was an SDP, see G. L. c. 123A, § 14, and Doe was committed to the treatment center for

an indeterminate period of one day to life.

In May, 2007, Doe filed a petition under G. L. c. 123A, § 9, seeking discharge from the treatment center.  After a trial in July, 2010, a jury found that Doe remained an SDP.  Doe filed a second petition for discharge in August, 2010, and in September, 2013, after two qualified examiners[1] submitted reports opining that Doe was no longer sexually dangerous, a Superior Court judge issued an order discharging Doe from the treatment center.  See Johnstone, petitioner, 453 Mass. 544, 553 (2009) (if two qualified examiners opine that petitioner is not currently sexually dangerous, Commonwealth cannot meet its burden in proceeding under G. L. c. 123A, § 9, to establish that petitioner remains sexually dangerous).

While these proceedings were taking place, SORB separately considered whether Doe should be required to register as a sex offender pursuant to G. L. c. 6, §§ 178C-178Q, and, if so, at what level.  In May, 2010, two months before the trial on Doe's first petition for discharge, SORB notified Doe of its recommendation that he be classified as a level three sex offender.  See G. L. c. 6, § 178L.  Doe sought administrative review of SORB's recommended classification and, in July, 2010,

---

[1] A qualified examiner is a licensed psychiatrist or psychologist who "has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction."  G. L. c. 123A, § 1.

two weeks before trial on his petition for discharge, but more than three years prior to his eventual discharge, an evidentiary hearing was conducted by a SORB hearing examiner. See G. L. c. 6, § 178L (2). In January, 2011, the hearing examiner issued a decision finally classifying Doe and ordering that he register as a level three sex offender. Doe sought review of the final classification order in the Superior Court, pursuant to G. L. c. 30A, § 14 (7), and G. L. c. 6, § 178M. A Superior Court judge affirmed, and Doe appealed. We granted Doe's application for direct appellate review.

Discussion. 1. Retroactive application. Unless relieved of the obligation to do so,[2] every sex offender in the Commonwealth must register with SORB. See G. L. c. 6, § 178E (a)-(c), (g)-(h), (l); Roe v. Attorney Gen., 434 Mass. 418, 424 (2001). Doe falls within the statutory definition of "sex offender," which includes a person "who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense . . . on or after August 1, 1981." See G. L. c. 6, § 178C. General Laws c. 6, § 178K (2) (d), prohibits SORB from exercising its power to relieve an offender from registration in specified circumstances, including "if a sex offender has been

_____

[2] As discussed infra, in limited circumstances, certain sex offenders may be relieved of the obligation to register, either by the sentencing judge or by the Sex Offender Registry Board (SORB). See G. L. c. 6, §§ 178E (e), (f), 178K (2) (d).

determined to be a sexually violent predator," or "has been convicted of a sex offense involving a child or a sexually violent offense, and such offender has not already registered pursuant to this chapter for at least ten years."

Doe contends that the order to register as a level three sex offender, pursuant to G. L. c. 6, §§ 178C-178Q, was based solely on his juvenile adjudications in 1990 and 1991, which predated the enactment of the registration statute in 1996.[3]  As such, Doe maintains, the sex offender registration statute operates retroactively in effect, and is unconstitutional as applied to him.[4]  In considering Doe's retroactivity claim, we apply the "new legal consequences" test.  See Moe v. Sex Offender Registry Bd., 467 Mass. 598, 607 (2014).  A "statute is

---

[3] The sex offender registration statute, G. L. c. 6, §§ 178C-178Q, inserted by St. 1996, c. 239, § 1, was rewritten in 1999, see St. 1999, c. 74, § 2, and amended several times thereafter.  The version of the statute applicable here appears in St. 1999, c. 74, § 2, as amended through St. 2010, c. 267.

[4] Doe also argues, relying in part on Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 786 (2008), that the requirement that he register as a level three offender for offenses committed while he was a juvenile, despite its stated regulatory purpose, is punitive as to him, and therefore in violation of constitutional prohibitions against ex post facto punishments and double jeopardy.  This argument is unavailing.  Even if the registration statute did have a retroactive effect as to Doe, that statute "is generally regulatory rather than punitive."  See id. at 787-788, citing Commonwealth v. Bruno, 432 Mass. 489, 499-502 (2000); Opinion of the Justices, 423 Mass. 1201, 1224-1227 (1996).  Accordingly, the prohibitions against ex post facto punishments and double jeopardy do not apply.

retroactive in effect where 'the new provision attaches new legal consequences to events completed before its enactment.'" Id., quoting Landgraf v. USI Film Prods., 511 U.S. 244, 269 (1994). Under this test, we examine "the degree of connection between the operation of the new rule" (Doe's obligation to register) "and a relevant past event" (Doe's juvenile adjudications). See Landgraf v. USI Film Prods., supra at 268-270.

We have concluded previously that new legal consequences had attached, and therefore that the registration statute applied retroactively in effect, in a case where SORB "determin[ed] that [a sex offender] had a mandatory obligation to register annually, solely by virtue of his prior conviction." See Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 784-785 (2008) (Doe No. 8725). In that case, the version of the statute then in effect, see St. 1999, c. 74, § 2, mandated that the offender register because he had been convicted of a sexually violent offense, and provided that, due to the nature of his conviction, the offender could "never be excused from registration." Id. at 785, citing G. L. c. 6, § 178K (2) (d). Because the sole basis for requiring that the offender register was his conviction of rape in 1979, we concluded that "the registration law attached new legal consequences to events that occurred before its

enactment," and "must be considered retroactive." Id. at 787.
We noted, however, that the registration statute would operate
prospectively if "a conviction for sexual offenses . . .
subject[s] a person only to potential registration and
classification, or even a presumption of registration, with the
ultimate registration requirement tied to an assessment (by
[SORB]) of the person's current level of dangerousness and risk
of reoffense." Id.

Here, SORB asserts that Doe's obligation to register is not
automatic, because he is eligible for relief from registration
under G. L. c. 6, § 178K (2) (d).[5] Doe's juvenile adjudications,
therefore, only made him eligible for potential classification
and registration. Moreover, the obligation to register requires
evaluation of an offender's current risk of reoffense and danger
to the community. See Doe No. 7083, 472 Mass. at     . The

---

[5] SORB states in its brief that "the [h]earing [e]xaminer
could have relieved [Doe] of his duty to register," under G. L.
c. 6, § 178K (2) (d), and Doe does not suggest that such is not
the case. We note that no provision in the registration statute
explicitly states that an offender who has been "adjudicated" of
the offenses listed in G. L. c. 6, § 178K (2) (d), is ineligible
for relief from registration. See Commonwealth v. Connor C.,
432 Mass. 635, 646 (2000) (under our long-standing jurisprudence
"an 'adjudication' that a child has violated a law generally is
not a 'conviction' of a crime"). Doe's juvenile
"adjudications," therefore, would not appear to qualify as
"convictions" precluding relief under G. L. c. 6, § 178K (2)
(d). Doe also has not been determined to be a sexually violent
predator pursuant to G. L. c. 6, § 178K (2) (c), and 803 Code
Mass. Regs. § 1.31 (2013).

basis for the requirement that Doe register was not only his 1990 and 1991 juvenile adjudications; Doe's obligation to register was based also on an evaluation of his risk to reoffend and his danger to the community as of the date of the evidentiary hearing in 2010.  See Doe No. 8725, supra at 793 (offender entitled to hearing to determine whether he "is a current danger to vulnerable members of our communities").  Cf. Commonwealth v. Bruno, 432 Mass. 489, 491-492, 497-499 (2000) (concluding that SDP act, G. L. c. 123A, did not apply retroactively to offenders convicted of sex offenses predating 1999 amendments to act, where convictions determined only eligibility for potential civil commitment and basis for commitment was "current mental condition").  Accordingly, no new legal consequences attached to Doe's juvenile adjudications, and the registration statute applied prospectively as to him.

2.  Whether the classification determination was unsupported by substantial evidence.  Review of a hearing examiner's decision, pursuant to G. L. c. 30A, § 14, is "confined to the record."  G. L. c. 30A, § 14 (5).  A reviewing court may set aside or modify a hearing examiner's decision for any one of the reasons listed in G. L. c. 30A, § 14 (7), including that the decision was unsupported by substantial evidence.  "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a

conclusion."  G. L. c. 30A, § 1 (6).

a.  Effect of youth.  Doe claims that his classification as a level three sex offender is unsupported by substantial evidence because the hearing examiner did not consider properly the recidivism rates of juvenile offenders.[6]  He asserts that SORB's regulations reflect outdated science.  In particular, Doe points to 803 Code Mass. Regs. § 1.40(4) (2013), known as factor 4, which, when applied to a juvenile sex offender who is an adult at the time of classification, treats a sex offense committed by a juvenile as an aggravating factor.[7]  Doe contends

---

[6] Doe contends that, as to sex offenders who committed their offenses while they were juveniles, the registration requirement takes on a retributive nature where, according to Doe, scientific studies indicate that juvenile sex offenders have lower rates of recidivism.  Doe argues that, in light of the lower recidivism rates of juvenile sex offenders, a level three classification undermines the rehabilitative purpose of the juvenile justice system.  Doe claims also that there is no need to protect the public from what he asserts is his minimal risk of reoffense.  To the extent that Doe is arguing that SORB failed to make an individualized assessment of his risk of reoffense based on the fact that he was a juvenile when he committed the offenses, we conclude that he did have an individualized assessment.

[7] Factor 4, "Offender's Age at First Sex Offense," a factor indicative of an increased risk of reoffense and degree of dangerousness, applies to Doe because he was under twenty-one years old at the time he committed his offenses.  See 803 Code Mass. Regs. § 1.40(4) (2013).  A related risk factor, however, Factor 14, "Sex Offender was a Juvenile when He Committed the Offense, His Response to Treatment and Subsequent Criminal History," is not applicable as indicative of a decreased risk of reoffense and degree of dangerousness, because Doe was more than seventeen years old at the time of the classification hearing. See 803 Code Mass. Regs. § 1.40(14) (2013).

that viewing a juvenile offense solely as an aggravating factor conflicts with more recent research regarding juvenile recidivism rates that indicates that juvenile sex offenders pose a decreased risk of reoffending.

In specific circumstances, we have concluded that a hearing examiner erred in not considering proffered recent scientific evidence.  Where a sixty-one year old offender "presented evidence of numerous scientific and statistical studies, published during the last decade, that conclude that age is an important factor in determining the risk of recidivism and that such risk diminishes significantly as an offender ages," Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 621 (2010), we determined that the hearing examiner erred by not considering the proffered scientific evidence.  Id. at 622-623.  Similarly, in Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 595 (2013), we held that "it was arbitrary and capricious for the hearing examiner to classify Doe's risk of reoffense and degree of dangerousness without considering the substantial evidence presented at the hearing [in the form of scientific studies] concerning the effect of gender on recidivism."  Here, however, because Doe did not raise any claim regarding recent research on juvenile recidivism rates before the hearing

examiner, and proffered no scientific studies or expert testimony at the classification hearing, the administrative record provides no basis on which we can conclude that the hearing examiner's decision was unsupported by substantial evidence.[8]

Doe's argument that SORB's regulations do not reflect current scientific knowledge concerning the recidivism rates of juvenile offenders may be construed also as a challenge to the general validity of SORB's regulations.[9]  On this record, Doe

---

[8] Doe will have the opportunity to present new evidence, including scientific studies, at a new evidentiary hearing.

[9] We have emphasized repeatedly that, "[w]here, as here, scientific knowledge in a field is rapidly evolving, . . . the applicable standards may require more frequent modification in order to reflect accurately the current state of knowledge" (citation omitted).  Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 623 n.6 (2010).  See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 115-116 (2014); Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 608 (2013).

The studies on which SORB relied when promulgating factors 4 and 14, the two factors most directly addressing juvenile offenders, are dated 1987, 1989, 1990, 1992, 1995, and 2001. See 803 Code Mass. Regs. §§ 1.40(4), (14) (2013).  SORB's regulations, therefore, do not exhibit consideration of an emerging consensus regarding the "mitigating qualities of youth," which is reflected in decisions of both the United States Supreme Court and this court.  See, e.g., Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 661 (2013), S.C., 471 Mass. 12 (2015), quoting Miller v. Alabama, 132 S. Ct. 2455, 2467 (2012).  See generally J.D.B. v. North Carolina, 131 S. Ct. 2394 (2011); Graham v. Florida, 560 U.S. 48 (2010); Roper v. Simmons, 543 U.S. 551 (2005).  For a sex offender such as Doe, SORB's regulations direct a hearing

fares no better under such an analysis. "A challenge to the validity of a general regulation 'cannot be resolved by requesting declaratory relief in an appeal from an administrative agency decision because judicial review is confined to the administrative record.'" Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 114 (2014) (Doe No. 68549), quoting Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 630 (2011).

b. Hearing examiner's findings. Doe argues that two of the hearing examiner's findings are unsupported by substantial evidence and therefore erroneous.

Doe points first to the hearing examiner's statement that Doe "admitted to sufficient facts to warrant a finding of delinquency . . . to two counts of forcible rape of a child." As Doe indicates, his admission to sufficient facts was only to one count of forcible rape of a child, and the statement thus is inaccurate. But the hearing examiner made only a single,

---

examiner to treat as an aggravating factor the fact that he committed his offenses as a juvenile, and do not prompt the hearing examiner to evaluate whether the "distinctive attributes of youth" such as "immaturity, impetuosity, and failure to appreciate risks and consequences" that contributed to his decision to offend might no longer be present because he has matured. See Diatchenko v. District Attorney for the Suffolk Dist., supra at 675 (Lenk, J., concurring), quoting Miller v. Alabama, supra at 2465.

passing reference to a second count, and, when assessing Doe's level of risk, properly considered that Doe had admitted to sufficient facts as to only one count of forcible rape. The hearing examiner accurately detailed the facts of Doe's prior offenses and appropriately applied the regulatory risk factors to the facts; the erroneous reference to a second count of rape did not affect the hearing examiner's analysis.

Doe claims also that the hearing examiner based his finding that Doe had a history of substance or alcohol abuse on unreliable evidence. SORB's regulations direct a hearing examiner to evaluate whether an offender "has a history of substance or alcohol abuse," 803 Code Mass. Regs. § 1.40(16) (2013). The hearing examiner considered evidence that from 1988 until 1990, as an adolescent, Doe drank six to twelve beers per week; that from 1997 until 1999, he received substance abuse treatment; and that, near the time of the offenses, he had used alcohol and marijuana. Our review of a hearing examiner's decision "does not turn on whether, faced with the same set of facts, we would have drawn the same conclusion, . . . but only 'whether a contrary conclusion is not merely a possible but a necessary inference.'" Doe No. 68549, 470 Mass. at 110, quoting Goldberg v. Board of Health of Granby, 444 Mass. 627, 638 (2005). On this record, we cannot say that the hearing examiner's determination that Doe had a history of alcohol or

substance abuse was unsupported by substantial evidence.

    c.  <u>Premature classification</u>.  Doe argues that his classification was based on the hearing examiner's evaluation of circumstances or conditions at the July, 2010, hearing that were subject to change, and that, by the time of his release from the treatment center in September, 2013, the classification had become stale and materially inaccurate.  We agree.

    As noted, the registration statute requires that SORB base its classification decision on an offender's risk to reoffend and danger to the public based on information that is current when an incarcerated or civilly committed offender reenters the community.  See <u>Doe No. 7083</u>, 472 Mass. at    .  The circumstances supporting Doe's level three classification that were before the hearing examiner in July, 2010, however, had changed substantially by the time Doe was discharged in September, 2013.  For instance, in July, 2010, the hearing examiner considered evidence that Doe had been responding well to treatment, but determined that "it is too soon to tell whether or not [Doe] has genuinely internalized treatment concepts such [as] to sufficiently avoid reoffense."  By 2013, after three additional years of treatment, two qualified examiners opined that Doe was no longer sexually dangerous, and he was released into the community.  See <u>Doe No. 7083</u>, <u>supra</u> at ("final classification must be based on an evaluation of the

offender's risk of reoffense at a time reasonably close to the actual date of discharge"); Doe, Sex Offender Registry Bd. No. 6904 v. Sex Offender Registry Bd., 82 Mass. App. Ct. 67, 78 (2012) (classification stale when based on evidence approximately four years old at time of offender's release from incarceration). As discussed in Doe No. 7083, supra at    , Doe's ability to seek reclassification every three years, see 803 Code Mass. Regs. § 1.37C(1), (2) (2013), does not afford an adequate remedy for a final classification that was stale at the time he was released and was required to register as a level three offender.

Conclusion. Because Doe's final classification was based on an evaluation of his risk several years before his release into the community, Doe is entitled to a new evidentiary hearing at which SORB will bear the burden of establishing Doe's current risk of reoffense and degree of dangerousness, consistent with the procedures set forth in 803 Code Mass. Regs. §§ 1.07-1.26 (2013). See Doe No. 7083, 472 Mass. at    . That hearing, at which SORB may introduce all the evidence introduced at Doe's first hearing, must be conducted within a reasonable time. The matter is remanded to the Superior Court for entry of an order of remand to SORB for further proceedings consistent with this opinion.

So ordered.