NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12223


SUSAN VAN ARSDALE  vs.  WILLIAM VAN ARSDALE.



Essex.     March 6, 2017. - May 31, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Divorce and Separation, Alimony, Modification of judgment.  Due
     Process of Law, Retroactive application of
     statute.  Statute, Retroactive application.


     Complaint for divorce filed in the Essex Division of the
Probate and Family Court Department on October 30, 1996.

     A complaint for modification, filed on September 1, 2015,
was heard by Mary Anne Sahagian, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     David E. Cherny (Erin M. Shapiro also present) for the
wife.
     Paul M. Kane (Allison R. McNulty also present) for the
husband.


     LOWY, J.  This appeal raises the constitutionality of

applying the durational limits of the Alimony Reform Act of 2011

(act), St. 2011, c. 124, to certain alimony agreements predating

the act's effective date.  We conclude that the application of

the act's durational limits to certain alimony agreements that predate the act is not unconstitutionally retroactive because the statute does not attach "new legal consequences to events completed before its enactment." Landgraf v. USI Film Prods., 511 U.S. 244, 270 (1994). We also conclude that the Probate and Family Court judge did not abuse her discretion when she declined to deviate from the durational limits in this case.

Background. 1. The Alimony Reform Act of 2011. The act changed neither the essential purpose nor the basic definition of alimony: "the payment of support from a spouse, who has the ability to pay, to a spouse in need of support." G. L. c. 208, § 48. See Hassey v. Hassey, 85 Mass. App. Ct. 518, 522 (2014). It did, however, make several changes to the Commonwealth's alimony laws. See generally Kindregan, Reforming Alimony: Massachusetts Reconsiders Postdivorce Spousal Support, 46 Suffolk U. L. Rev. 13, 26 (2013).

The relevant change on appeal is the creation of durational limits -- or presumptive termination dates -- for alimony obligations arising from marriages lasting fewer than twenty years. G. L. c. 208, § 49 (b). This presumption that alimony should terminate after a certain length of time may be overcome, however, by showing that the payment of alimony beyond the relevant durational limit is "required in the interests of

justice."  Id.  See George v. George, 476 Mass. 65, 69-70
(2016).

The Legislature provided that the durational limits, in
contrast to the remainder of the act, may be applied to alimony
judgments that entered before the act's effective date of March
1, 2012, with certain delineated exceptions not relevant here.
St. 2011, c. 124, §§ 4, 7.  See Chin v. Merriot, 470 Mass. 527,
536 (2015).  See also George, supra at 68.

2.  Facts.  William Van Arsdale and Susan Van Arsdale
married in 1979 and divorced in 1997.[1]  They had two children,
who were unemancipated at the time of divorce.  The divorce
judgment incorporated and merged the parties' separation
agreement, which provided for William to pay $3,333.33 in child
support and $3,333.33 in alimony to Susan each month.  The
agreement provided that the alimony payments would continue
until either party's death or Susan's remarriage.
Notwithstanding those termination provisions, the parties agreed
to review William's alimony payment obligations when the
parties' youngest child became emancipated and when William
retired from full-time employment, provided he was at least
sixty-two years of age.

---

[1] Because they share a last name, we refer to the parties by
their first names.

In 2005, William filed a complaint for modification in which he alleged that the parties' youngest child was emancipated. That complaint led to a 2006 modification agreement, which merged with the modification judgment, wherein the parties agreed to discontinue the child support payments and to increase alimony payments to $7,571.26 per month.

In 2015, William filed another complaint for modification seeking to terminate his alimony obligation based upon the act's durational limits and because he had retired from full-time employment. Susan filed an answer and a counterclaim seeking to increase both her alimony payments and the amount of life insurance William was obligated to maintain on his life for her. She was later permitted to amend her answer to add her challenge to the constitutionality of the durational limits.

After a trial, the Probate and Family Court judge issued an order terminating William's obligation to pay Susan alimony because the act's relevant durational limit had been exceeded[2] and Susan had not shown that deviation from them was necessary. The judge reasoned that deviation was not necessary because Susan's medical condition had not precluded her from employment

---

[2] For marriages lasting longer than fifteen years but less than twenty years, like the Van Arsdale's, the durational limit -- which is expressed as a percentage of the length of the marriage -- is "[seventy] per cent of the number of months of the marriage." G. L. c. 208, § 49 (b) (3).

and that she had been terminated from her job on account of her failure to "heed constructive criticism."  Although the judge declined to rule on Susan's constitutional arguments, she noted that Susan should not have had an expectation that the alimony payments would continue in perpetuity because of the provision in the agreement allowing for a review of William's alimony obligation upon his retirement.  Susan appealed, and this court granted her application for direct appellate review.

Discussion.  1.  Constitutional challenge.  Susan argues that the application of the act's durational limits to the alimony agreement between her and William is unconstitutionally retroactive.

a.  Retroactivity.  When a party argues that a statute is impermissibly retroactive we first "must determine whether the law . . . has a retroactive effect.  If not, and assuming the law is otherwise constitutional, no further inquiry is necessary."  Moe v. Sex Offender Registry Bd., 467 Mass. 598, 606 (2014).[3]

To answer the question, we employ the "new legal consequences" test as articulated by the United States Supreme Court in Landgraf, 511 U.S. at 269-270.  See Moe, 467 Mass. at

---

[3] If the statute is determined to be retroactive we must ask two more questions:  "whether the Legislature clearly intended it to be retroactive" and "[w]here it so intended, . . . whether retroactive application is constitutional."  Moe v. Sex Offender Registry Bd., 467 Mass. 598, 606 (2014).

607. "[T]he court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." Landgraf, supra.

b. Analysis. Before discussing whether the durational limits presumption has a retroactive effect, we must first address observations we made in George and Holmes v. Holmes, 467 Mass. 653, 661 n.9 (2014). In George, we stated plainly that the durational limit provisions of the act were "retroactive." George, 476 Mass. at 68, citing Rodman v. Rodman, 470 Mass. 539, 544 (2015), Chin, 470 Mass. at 536, and Holmes, supra. That statement, however, was merely a recognition that the durational limits presumption applies to alimony agreements that predate the act. We did not comment on whether the limits have a retroactive effect in the constitutional sense. See Landgraf, 511 U.S. at 269 ("statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment").

We now turn to whether the act's durational limits presumption has a retroactive effect (i.e., whether it attaches new legal consequences to agreements that predate the act).

In Doe, Sex Offender Registry Bd. No. 3839 v. Sex Offender Registry Bd., 472 Mass. 492, 497 (2015) (Doe No. 3839), we examined whether G. L. c. 6, §§ 178C-178Q, the sex offender registry law, had an unconstitutionally retroactive effect. The law provides that individuals convicted of, or adjudicated as a delinquent juvenile by reason of, a sex offense have to register with the Sex Offender Registry Board (SORB). The registration requirement applies to people who were convicted or adjudicated delinquent prior to the statute's enactment. Doe No. 3839, supra at 496-497. The statute, however, allows SORB to relieve individuals such as the plaintiff in that case from the obligation to register as a sex offender. Id. at 497. Because the law made the plaintiff merely eligible for registration and allowed him an opportunity to prove to SORB that he should not have to register, we held that the law did not necessarily attach new legal consequences to the plaintiff's prestatute adjudications and that the statute applied prospectively to him. Id.

By contrast, in Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 787, 793 (2008) (Doe No. 8725), we held that a prior version of the sex offender

registry law was unconstitutional as applied to the plaintiff because it required him to register as a sex offender (i.e., attached new legal consequences to him) "solely by virtue of his prior conviction."  Id. at 784.  Unlike the plaintiff in Doe No. 3839, the plaintiff in Doe No. 8725 did not have an opportunity to prove that he should not have to register.  Doe No. 8725, supra at 787.  This lack of opportunity to escape the effects of a statute attaching new legal consequences and enacted after the plaintiff's conviction was the crucial distinction between an unconstitutionally retroactive statute (Doe No. 8725) and a constitutional one (Doe No. 3839).

Here, as in Doe No. 3839, Susan had an opportunity to show that the durational limits should not apply to her.  See G. L. c. 208, § 49 (b).  The durational limits merely create a presumption of termination that a recipient spouse such as Susan can rebut by showing that deviation from the limits is "required in the interests of justice."  Id.  Applying such a presumption is not impermissibly retroactive.  See Doe No. 3839, 472 Mass. at 497 (presumption of registration does not attach new legal consequence to events prior to sex offender registry law).  See also Tobin's Case, 424 Mass. 250, 255 (1997) ("[E]stablishment of a rebuttable presumption also does not violate due process. Presumptions are simply rules of evidence that fall within the general power of government to adopt").  Thus, the act compels

no new legal consequences to the bargains struck by parties in merged alimony agreements entered into prior to the act's effective date.

The constitutionality of the application of the act's durational limits presumption to agreements that predate the act is further demonstrated by the standard for deviation beyond those limits articulated in George.  There, we held that the G. L. c. 208, § 49 (b), "interests of justice" standard should focus on the circumstances of the parties in the "here and now."  George, 476 Mass. at 70.  By requiring such a temporal focus, the statute ensures that any new legal consequences that result from the durational limits are not the result of actions that predated the act, but rather are based on the circumstances of the parties as they exist before the judge deciding a modification complaint.  See Doe No. 3839, 472 Mass. at 497 (individual's obligation to register was based on contemporaneous evaluation of risk to reoffend and dangerousness, rather than on convictions prior to sex offender registry law).

Because we hold that the act's durational limits are not retroactive in the constitutional sense, no further inquiry is necessary.  See Moe, 467 Mass. at 606.

2.  Abuse of discretion.  "[A] judge enjoys considerable discretion in fashioning an appropriate modification

judgment." Holmes, 467 Mass. at 661, quoting Pierce v. Pierce, 455 Mass. 286, 293 (2009).  Here, the judge concluded that Susan's health did not preclude her from employment; that she had two residences, one of which could be rented out; that she had over $170,000 in cash and more than $1 million in assets; and that her lifestyle had not been negatively impacted since the 2006 modification.  Further, the judge properly examined the circumstances of the parties in the "here and now."  George, 476 Mass. at 70.  The judge did not abuse her discretion in declining to deviate beyond the act's durational limits.

Conclusion.  The durational limits of the act are not impermissibly retroactive, and the judge did not abuse her discretion in declining to deviate beyond the limits.

Judgment affirmed.