NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-1307                                        Appeals Court

JOHN NICHOLAS CLEMENT  vs.  LAURIE OWENS-CLEMENT.

No. 19-P-1307.

Middlesex.     May 6, 2020. - October 16, 2020.

Present:  Vuono, Milkey, & Desmond, JJ.


Divorce and Separation, Modification of judgment, Alimony.


Complaint for divorce filed in the Middlesex Division of
the Probate and Family Court Department on May 9, 2012.

A complaint for modification, filed on November 27, 2017,
was heard by Roxann C. Tetreau, J.


Julie R. Hess for the husband.
Joseph C. Clermont for the wife.


VUONO, J.  After approximately six years of marriage, John
Nicholas Clement (husband) and Laurie Owens-Clement (wife) were
divorced on April 9, 2013.  The divorce judgment incorporated
the portion of the parties' merged separation agreement in which
they waived past and present alimony.  Approximately four and
one-half years (fifty-five months) after the divorce, the wife

filed a complaint for modification seeking alimony on the basis of her complete disability and inability to work. A judge of the Probate and Family Court concluded that deviation from the Alimony Reform Act's (act) presumptive forty-two month durational limit was "required in the interests of justice," G. L. c. 208, § 49 (b), and issued a modification judgment requiring the husband to pay general term alimony of $200 per week until either party's death, the wife's remarriage, or further order of the court. On appeal, the husband primarily argues that the judge abused her discretion by deviating from the durational limits under § 49 (b) and failing to terminate alimony upon his attainment of "full retirement age," G. L. c. 208, § 49 (f). The husband also challenges the judge's consideration of his income from a part-time job acquired after the divorce in determining the amount of alimony. We agree with the husband that alimony should terminate when he reaches full retirement age and remand the case for further proceedings on this aspect of the judgment.

Background. We summarize the relevant facts found by the judge, supplementing them with undisputed evidence in the record, and reserving certain facts for later discussion. See Pierce v. Pierce, 455 Mass. 286, 288 (2009). The parties were married on September 9, 2006, and divorced on April 9, 2013. Their separation agreement, which was incorporated into the

divorce judgment, provided that "all provisions related to . . . alimony [shall] merge" with the divorce judgment, rather than survive and retain independent legal significance.  The separation agreement further provided that "[t]he parties have been advised of their rights under the Alimony Reform Act . . . and, based upon their present income and subject to the [agreement's] merger provisions . . . , each party agrees to waive any right to receive past or present alimony from the other party."  The separation agreement was silent as to future alimony, but as we discuss below, the parties stipulated that they did not waive future alimony.

In November 2017, the wife filed a complaint for modification seeking alimony from the husband on the basis that she was "now completely disabled and unable to work," and the husband was thereafter ordered to pay temporary alimony of $200 per week during the pendency of modification proceedings.  In January 2019, the parties filed a stipulation of uncontested facts providing, in relevant part, that (1) "[f]uture alimony was not waived" in the separation agreement; (2) the parties "enjoyed a middle-class standard of living" during the marriage; (3) at the time of the divorce, the wife was employed part-time and the husband was employed full-time; (4) since May 2016, the wife "has been completely disabled and unable to work, due to medical issues," (5) the wife underwent surgery for removal of a

large brain tumor in July 2016, and continues to suffer from a seizure disorder, nerve damage to her face, and hearing loss; (6) the wife requires "multiple medical appointments every month," she has seen at least fourteen different medical providers, her "medical issues are severe and on-going," and "[h]er physicians have determined [that] she is and will be permanently disabled"; (7) the wife has completely liquidated her retirement and other financial assets to pay for living expenses since becoming unable to work; (8) the wife's present income consists solely of temporary alimony and food stamps ($45 per week), along with financial assistance from a friend who has been paying her rent; (9) the wife was initially approved to receive $490 per month in social security disability benefits, but was later denied due to her receipt of temporary alimony; and (10) the husband's income is $1,846 per week, the majority of which is derived from a disability pension that statutorily limits his ability to earn additional income.

A one-day trial was held on January 16, 2019, at which both parties (who were represented by counsel) testified. On April 16, 2019, the judge issued a modification judgment requiring the husband to pay alimony to the wife of $200 per week "until the death of either party, the remarriage of the [wife], or further order of the [c]ourt." The modification judgment further provided that the husband's "obligation to pay alimony shall not

be subject to durational limits as set forth in [G. L. c. 208, § 49 (b),] as deviation is required in the interests of justice."

The judge largely adopted the parties' stipulation of uncontested facts, and made the following additional relevant findings in support of the modification judgment. The wife "is unable to provide sufficient support for herself due to her permanent disability" and because "she has very minimal assets." Although the husband is also disabled, he retains the ability to work and can earn up to approximately $40,000 annually without any reduction in his disability pension income.[1] The husband currently receives nontaxable disability pension income of $1,173 per week, and earns additional income of $673 per week from his part-time job as a driving instructor. The judge credited the wife's financial statement in its entirety, finding the wife's reported expenses of $533 per week to reflect only the "basic necessities" of "housing, food, clothing, utilities and a minimal loan payment on a motor vehicle." In contrast, the judge found that the husband's weekly expenses included "entertainment, vacations, lottery tickets and an allowance for his current spouse's adult child." The judge did not credit the

---

[1] The husband, a former State trooper, was injured during the course of his employment and receives a disability pension.

total amount of weekly expenses reported by the husband because it included duplicate medical expenses and household expenses paid by the husband's current spouse.  The judge found that the wife has a need for alimony to support her modest lifestyle and the husband has the ability to pay alimony of $200 per week while maintaining his current standard of living.[2]

The judge also found that, for purposes of calculating the durational limits under the Act, the parties' marriage was seventy-one months, thus the presumptive durational limit for general term alimony was forty-two months (i.e., sixty percent of the length of the marriage).  See G. L. c. 208, § 49 (b) (2) ("Except upon a written finding by the court that deviation beyond the time limits of this section are required in the interests of justice, . . . [i]f the length of the marriage is 10 years or less, but more than 5 years, general term alimony shall continue for not longer than 60 per cent of the number of months of the marriage").  The judge ultimately concluded that the wife had "met her burden" by "clearly demonstrat[ing] by a preponderance of the evidence that . . . deviation beyond the duration limits is required in the interests of justice."

---

[2] The judge observed that the husband's savings account balance had actually increased, and he had not incurred any significant debt, while paying temporary alimony of $200 per week.

Discussion.[3] 1. Deviation from durational limits. The husband argues that the judge erred in deviating from the presumptive forty-two month durational limit under G. L. c. 208, § 49 (b), for two reasons. First, he claims that the judge had no authority to award alimony after the presumptive durational period had already expired; and second, he argues that the wife failed to meet her burden of proving that deviation was required in the "interests of justice." G. L. c. 208, § 49 (b).

We address each argument in turn, but first we must determine when the act's durational limit clock began to run.

_____

[3] As an initial matter, the husband contends that the judge failed to make findings regarding the parties' intent to waive future alimony, as required by McManus v. McManus, 87 Mass. App. Ct. 864 (2015). However, nothing in the trial transcript or the record appendix indicates that the husband raised this argument below, and the parties agreed in their stipulation of uncontested facts that "[f]uture alimony was not waived." See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) ("An issue not raised or argued below may not be argued for the first time on appeal" [citation omitted]). Even if this argument had been properly raised below, which we do not suggest, the case relied on by the husband is distinguishable. McManus involved a surviving alimony provision that was silent as to future alimony; thus, the trial court judge was required to ascertain the parties' intent with respect to future alimony because surviving provisions are generally not modifiable. See McManus, supra at 864-865, 867, 870 n.8 (concluding that dispute of material fact regarding parties' intent rendered summary judgment inappropriate and remanding matter to trial court for parol evidence). See also Lalchandani v. Roddy, 86 Mass. App. Ct. 819, 822 (2015) ("surviving, nonmerged alimony provisions are not modifiable"). Here, in contrast, the alimony provision did not survive; instead, it merged with the divorce judgment and was judicially modifiable upon a material change in circumstances. See McManus, supra at 865 n.1.

The presumptive durational period under § 49 (b) commences on the date of the initial general term alimony award, which is usually the date of the divorce judgment, see Holmes v. Holmes, 467 Mass. 653, 659 (2014), or a later date if alimony is not contemplated in the divorce judgment. See Snow v. Snow, 476 Mass. 425, 425, 428-430 (2017).[4] Thus we must decide whether the April 9, 2013 divorce judgment or the April 16, 2019 modification judgment was the initial alimony award. The husband contends that the divorce judgment, although not requiring him to pay alimony, was the initial award for purposes of starting the durational limit clock. We agree.

We have held that in cases where the divorce judgment "incorporated and merged with a stipulation of the parties which expressly addressed the issue of alimony" by waiving past and present alimony and reserving the right to seek future alimony, the divorce judgment is the initial alimony award, and any subsequent request for alimony should be treated as a complaint for modification. Buckley v. Buckley, 42 Mass. App. Ct. 716, 722 (1997). See Flor v. Flor, 92 Mass. App. Ct. 360, 365-366

_____

[4] In Snow, the wife's postdivorce complaint for alimony was treated as an initial complaint, rather than a complaint for modification, because she "did not pursue her request for maintenance [in the divorce] and the judge . . . made no findings based on the statutory factors in awarding no maintenance" in the divorce judgment. 476 Mass. at 429.

(2017). Here, as in Buckley, the parties contemplated but expressly waived past and present alimony in their separation agreement, essentially providing for a "zero dollar alimony 'award,'" Buckley, supra at 721 n.5,[5] and they clearly "intended and reached a full and final settlement of their financial affairs."[6] Id. at 720. See Flor, supra. "By incorporating and merging into the court's divorce [judgment] the agreement containing this alimony provision, the trial judge passed on and approved the parties' disposition of the issue." Buckley, supra. Cf. Snow, supra at 429 n.5 (divorce judgment ordering no alimony would have constituted initial alimony award "if the [divorce] judge had considered each of the statutory factors and determined based on the circumstances that no maintenance award was appropriate," because "the spouse who sought alimony would have had a full and fair adjudication on the merits of the claim

---

[5] We "construe[d] the subject language in the Buckleys' stipulation as being a 'provision' for alimony which allocates a zero dollar alimony 'award.'" Buckley, 42 Mass. App. Ct. at 721 n.5. "This distinguishes the matter at hand from [other cases], where there is neither 'provision' for, 'award' of, nor 'mention' of alimony in the divorce decree." Id.

[6] The separation agreement provided that "[t]he purpose of this [a]greement [is] . . . [t]o determine what should be paid to the husband or the wife for his or her support and maintenance in consideration of the provisions of [G. L. c. 208, § 34] . . . . The parties desire by this [a]greement to confirm their separation and to settle between them[] all questions pertaining to . . . the support and maintenance of the parties."

for alimony").  We therefore conclude that the April 9, 2013 divorce judgment incorporating and merging the parties' alimony provision within their separation agreement was the initial alimony award for purposes of starting the durational limit clock under § 49 (b).

We now return to the husband's argument that the judge lacked statutory authority to grant deviation on a complaint for modification filed thirteen months after the presumptive forty-two month durational period had already expired.  According to the husband, the act permits a judge to deviate from the presumptive durational limits only when establishing an initial award or modifying an "existing" award.  See G. L. c. 208, §§ 49 (f), 53 (e).  Therefore, the husband argues that, unless an alimony award is extended before its presumptive termination date under § 49 (b), it terminates by operation of law and there is no longer an "existing" alimony award for the judge to extend.  We conclude otherwise.

The resolution of this issue "involves a question of statutory interpretation, which we review de novo."  Duff-Kareores v. Kareores, 474 Mass. 528, 533 (2016).  "Although we look first to the plain language of the provision at issue to ascertain the intent [of] the Legislature, we consider also other sections of the statute, and examine the pertinent language in the context of the entire statute."  Id., quoting

Chin v. Merriot, 470 Mass. 527, 532 (2015). Section 49 (b) provides that, "[e]xcept upon a written finding by the court that deviation beyond the time limits of this section are required in the interests of justice, if the length of the marriage is 20 years or less, general term alimony shall terminate no later than a date certain under the [act's] durational limits." G. L. c. 208, § 49 (b). With respect to modification, § 49 (e) provides that "general term alimony may be modified in duration or amount upon a material change of circumstances warranting modification. Modification may be permanent, indefinite or for a finite duration, as may be appropriate." G. L. c. 208, § 49 (e). Section 53 (e) further provides that "in modifying an existing order, the court may deviate from duration and amount limits for general term alimony . . . upon written findings that deviation is necessary" (emphasis added). G. L. c. 208, § 53 (e).

Another statutory provision relating to a judge's authority to modify a prior alimony award is set forth in G. L. c. 208, § 37, which was left unchanged by the act and provides, in relevant part, that "[a]fter a judgment for alimony . . . the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such alimony . . . and the payment thereof, and may make any judgment relative thereto which it might have made in

the original action."  See Balistreri v. Balistreri, 93 Mass. App. Ct. 515, 519 n.14 (2018) ("Even within the field of alimony, the act did not result in a wholesale displacement of our existing law").  Neither § 49 (e), nor § 37, impose a time limit on a judge's authority to modify the duration of a prior alimony award.  Had the legislature intended to impose such a time limit, it would have included express language to that effect.  See Chin, 470 Mass. at 537, quoting Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006) (court will not "read into the statute a provision which the Legislature did not see fit to put there").

The husband urges us to construe the act as implicitly prohibiting the extension of alimony orders that have terminated by operation of law under § 49 (b), claiming that such a construction is consistent with the Legislature's intent to provide parties with "a clear expectation of a finite period of time alimony will be paid and/or received."  Letter of December 28, 2010, from Chairs of the Alimony Task Force to Chairs of the Joint Committee on the Judiciary.  The Legislature has, however, elsewhere expressed its "intent that the durational limits apply to preexisting alimony awards" established prior to the act. George v. George, 476 Mass. 65, 70-71 (2016), citing St. 2011, c. 124, § 4 (b) (uncodified section).  In uncodified § 5 of St.

2011, c. 124, the Legislature created a "phase in" structure for modification complaints seeking termination of preexisting alimony awards solely on the basis of the new durational limits. See letter of December 28, 2010, from Chairs of the Alimony Task Force to Chairs of the Joint Committee on the Judiciary ("'phase in' structure" intended to "prevent an additional burden on the courts").  The Legislature thus anticipated that many preexisting alimony awards already exceeded the act's durational limits.  However, there is no indication in either the codified or uncodified sections of the act that the Legislature intended for such preexisting awards to automatically terminate by operation of law simply because they already exceeded the presumptive durational limits.[7]  Had the Legislature so intended, there would have been no need to create a "phase in" schedule to prevent the courts from being overwhelmed with modification complaints, as all preexisting awards that already exceeded the durational limits would have automatically terminated on the act's effective date.  See Duff-Kareores, 474 Mass. at 538 (appellate court should construe statute in manner that avoids

---

[7] Uncodified § 4 (b) of St. 2011, c. 124, provides that "[e]xisting alimony awards which exceed the durational limits established in [G. L. c. 208, § 49,] shall be modified upon a complaint for modification without additional material change of circumstance, unless the court finds that deviation from the durational limits is warranted."

illogical result). See also Voorhis v. Relle, 97 Mass. App. Ct. 46, 48, 52-53 (2020) (no indication that wife's counterclaim seeking deviation was denied on basis that it was filed after presumptive durational period had already expired).

Moreover, the durational limits of § 49 (b) "merely create a presumption of termination that a recipient spouse . . . can rebut." Van Arsdale v. Van Arsdale, 477 Mass. 218, 222 (2017). This presumption is in contrast to § 49 (a), which strictly requires alimony to "terminate upon the remarriage of the recipient or the death of either spouse," with no opportunity for rebuttal by the recipient spouse. G. L. c. 208, § 49 (a).

Accordingly, viewing the act as a whole (including its uncodified provisions), see Duff-Kareores, 474 Mass. at 534, it is reasonable to infer that the Legislature did not intend to prohibit a judge from deviating from the act's presumptive durational limits simply because the modification complaint was filed after the presumptive durational period had expired. Thus, we conclude that the term "existing order" as it is used in § 53 (e) merely refers to a prior alimony award. See Rodman v. Rodman, 470 Mass. 539, 541 (2015), quoting Mailhot v. Travelers Ins. Co., 375 Mass. 342, 348 (1978) ("Where a literal reading would 'lead to an awkward and even intolerable result,' we will eschew it 'for a more liberal or more encompassing approach'"). Insofar as the husband argues that our reading

unfairly permits a dependent spouse of a short-term marriage to seek alimony indefinitely, we note that the recipient still bears the burden of establishing that deviation is required in "the interests of justice." George, 476 Mass. at 70, quoting G. L. c. 208, § 49 (b). This is not a hollow test, nor is it an easy burden to meet, see, e.g., Van Arsdale, 477 Mass. at 223 (affirming judge's decision to decline to deviate from durational limits); Voorhis, 97 Mass. App. Ct. at 53 (same), and it requires the judge to consider both parties' circumstances at the time that deviation is sought. See George, supra. Moreover, in determining whether the deviation is warranted, a judge may consider "any . . . factor that the court deems relevant and material." G. L. c. 208, § 53 (e) (9). Accordingly, there is nothing prohibiting a judge from considering the amount of time that has elapsed between the presumptive durational limit termination date and the date the recipient filed the complaint, the reason (if any) for the recipient's delay in filing, and whether the delay has prejudiced the payor spouse. Cf. Talbot v. Talbot, 13 Mass. App Ct. 456, 459-460 (1982) ("We recognize that it is most troublesome to impose additional burdens on a husband long after he reasonably believed he was free of obligation to his former wife . . . . [T]he judge may consider the consequences, if any, of the delay in the wife's claim, such as the obligations, if

any, incurred by the husband prior to the wife's complaint, in the reasonable belief that because of the passage of time he would not be further obligated on her account"). Here, the amount of time that elapsed between the presumptive termination date and the wife's complaint for modification was minimal, the wife sought alimony as a last resort after depleting her modest assets, and there is no indication that the husband was prejudiced by the delay -- especially in light of the fact that he paid no alimony to the wife during the entire presumptive durational period.

The husband next contends that the wife failed to meet her burden of showing, by a preponderance of the evidence, that deviation from the presumptive durational limit was required in the "interests of justice." George, 476 Mass. at 70, quoting G. L. c. 208, § 49 (b).

We review the modification of alimony, and a judge's decision to deviate from the act's presumptive durational limits, for abuse of discretion. See Van Arsdale, 477 Mass. at 223.[8] "[W]hen disputes of fact arise the judge must make written

_____

[8] "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made 'a clear error of judgment in weighing' the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

findings based on evidence to determine whether the 'interests of justice' require alimony payments to continue beyond the durational limits of the act. The recipient spouse bears the burden of proving by a preponderance of the evidence that deviation beyond the presumptive termination date is 'required in the interests of justice.'" George, 476 Mass. at 70, quoting G. L. c. 208, § 49 (b). "Further, a judge should evaluate the circumstances of the parties in the here and now; that is, as they exist at the time the deviation is sought, rather than the situation as it existed at the time of divorce." George, supra. "The statutory factors to be considered in connection with deviation beyond the durational limits are set forth in G. L. c. 208, § 53 (e)." Voorhis, 97 Mass. App. Ct. at 50.

The judge in this case, properly focusing on the "here and now," George, 476 Mass. at 70, found that deviation beyond the presumptive forty-two month durational limit was required in the "interests of justice," G. L. c. 208, § 49 (b), due to the wife's total disability caused by her severe, ongoing health issues, and her present inability provide for her own support resulting from her inability to work and lack of assets. See G. L. c. 208, § 53 (e) ("Grounds for deviation may include: (1) advanced age; chronic illness; or unusual health circumstances of either party; . . . (8) a party's inability to provide for that party's own support by reason of that party's deficiency of

property, maintenance or employment opportunity; and (9) upon written findings, any other factor that the court deems relevant and material").  As we have noted, the facts upon which the judge relied were largely undisputed.  Given the ample evidence supporting the judge's determination that the wife is unable to provide for her own support, and the modest amount of alimony awarded (covering only the wife's "basic necessities"[9]), we discern no abuse of discretion in the judge's decision to deviate from the presumptive durational limits of § 49 (b).  Cf. Van Arsdale, 477 Mass. at 223 (deviation not warranted where judge found that wife's "health did not preclude her from employment; that she had two residences, one of which could be rented out; that she had over $170,000 in cash and more than $1 million in assets; and that her lifestyle had not been negatively impacted since the 2006 modification"); Voorhis, 97 Mass. App. Ct. at 52 (deviation not warranted where judge found that wife "was working full time, derived income from the rental of a parking space, and was the beneficiary of a trust").[10]

---

[9] The judge awarded alimony consistent with the wife's current "modest" lifestyle, rather than with the middle-class lifestyle enjoyed by the parties during the marriage.  See Voorhis, 97 Mass. App. Ct. at 53, quoting George, 476 Mass. at 70 ("When considering a deviation from the durational limits of alimony, the analysis is in the 'here and now,' not the marital lifestyle at the time of the divorce").

[10] To the extent the husband argues that the judge should have considered the wife's eligibility for government benefits

Moreover, if there is a material change in circumstance in the future, either party may file a complaint for modification to modify or terminate the alimony award.

2. Full retirement age.[11] The husband next argues that the judge erred in failing to terminate alimony upon the husband's attainment of "full retirement age," under G. L. c. 208, § 49 (f). We agree.

Section 49 (f) provides that, "[o]nce issued, general term alimony orders shall terminate upon the payor attaining the full retirement age." G. L. c. 208, § 49 (f). A judge "may grant a recipient an extension of an existing alimony order" beyond the payor's full retirement age "for good cause shown; provided, however, that in granting an extension, the court shall enter

---

when determining whether deviation was required in the "interests of justice," we note that public policy favors ordering alimony to prevent the recipient spouse from becoming a public charge. See, e.g., Knox v. Remick, 371 Mass. 433, 437 (1976) ("Where . . . the Probate Court judge determines that one spouse is or will become a public charge, the judge may order support pursuant to his statutory authority, not specifically enforcing the [surviving] separation agreement to the point where the separation agreement would be used to impose support obligations on the taxpayers of the Commonwealth").

[11] "Full retirement age," is defined as "the payor's normal retirement age to be eligible to receive full retirement benefits under the United States Old Age, Survivors, and Disability Insurance program; but shall not mean 'early retirement age,' as defined under 42 U.S.C. 416, if early retirement is available to the payor or maximum benefit age if additional benefits are available as a result of delayed retirement." G. L. c. 208, § 48.

written findings of:  (i) a material change of circumstance that occurred after entry of the alimony judgment; and (ii) reasons for the extension that are supported by clear and convincing evidence."  G. L. c. 208, § 49 (f) (2).  By the plain language of the act, a judge modifying a prior alimony order is not permitted to extend alimony beyond the payor's attainment of full retirement age unless the judge has made specific findings pursuant to § 49 (f) (2).  See Holmes, 467 Mass. at 658, quoting G. L. c. 208, § 49 (f) ("under the reform act, even where a judge orders that alimony be paid for the presumptive maximum duration, the actual duration of alimony may be less, because [g]eneral term alimony shall . . . presumptively terminate when the payor spouse attains the 'full retirement age'" [quotation omitted]).

Here, the judge did not make any express findings pursuant to § 49 (f) (2), there is no indication that the issue of extending alimony beyond the husband's full retirement age was addressed at trial, and the modification judgment was silent as to retirement.  Accordingly, to the extent that the judge did not order alimony to terminate once the husband reaches full retirement age, this was error.  The modification judgment must therefore be amended to include the husband's attainment of full retirement age as an event triggering the termination of alimony.  Should the wife seek an extension of alimony beyond

that date, she will be required to file a complaint for modification and make the requisite showing under § 49 (f) (2).

3. Consideration of income from part-time job acquired after divorce. Lastly, the husband contends the judge improperly considered, for purposes of calculating alimony, the income that he earns from his current part-time job, which he acquired after the divorce. See G. L. c. 208, § 54 (b) ("Income from a second job or overtime work shall be presumed immaterial to alimony modification if:  (1) a party works more than a single full-time equivalent position; and (2) the second job or overtime began after entry of the initial order").  However, the husband's current part-time job is his only job; he does not have another "single full-time equivalent position."  Id. Moreover, at the time of the divorce, the husband worked full-time as a Massachusetts State trooper (earning $1,450 per week) and earned regular overtime (earning an additional $1,000 per week).  Section 54 (b)'s exclusion of income from a second job acquired post-divorce is clearly intended to avoid penalizing a payor who obtains a second job to meet his existing alimony obligation, and such circumstances are not present here. Moreover, § 54 (b) merely creates a rebuttable presumption that income from a second or part-time job is irrelevant to alimony. Accordingly, we discern no abuse of discretion or other error in

the judge's consideration of the husband's income from his part-time employment.[12]

Conclusion. Paragraph numbered one of the judgment dated April 16, 2019, is vacated, and shall be replaced by a new paragraph numbered one as follows: The Defendant shall pay alimony to the Plaintiff in the amount of $200.00 per week until the death of either party, the remarriage of the Plaintiff, the Defendant's attainment of "full retirement age" as defined in G. L. c. 208, § 48, whichever occurs first, unless otherwise

---

[12] The husband also argues that the judge engaged in inequitable double dipping by considering his disability pension as a stream of income for purposes of calculating alimony. See Croak v. Bergeron, 67 Mass. App. Ct. 750, 758-759 (2006) ("'double dipping' [is used] to describe the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations" [citation omitted]). However, we need not resolve the double-dipping issue, as the husband earns $673 per week exclusive of his disability pension and the $200 alimony award is still within the act's amount guidelines (as it neither exceeds the wife's needs nor thirty to thirty-five percent of the difference between the husband's income of $673 and the wife's income of $45). See G. L. c. 208, § 53 (b). We are likewise unpersuaded by the husband's contention that the judge improperly considered his new wife's income when calculating alimony, in contravention of G. L. c. 208, § 54 (a). Although the judge found that the husband's new wife earns approximately $60,000 to $65,000 annually, and the new wife pays for some of the household expenses reported on the husband's financial statement, the judge used only the husband's income to calculate alimony. To the extent that we do not address the husband's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

ordered by the court.  As so modified, the judgment is affirmed.[13]

So ordered.

---

[13] The wife's request for appellate attorney's fees is denied.